UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT ROBINSON, #602273,

      Petitioner,                                  Civil Action No. 18-CV-13943

vs.                                            HON. BERNARD A. FRIEDMAN

SHERMAN CAMPBELL,

      Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Albert Robinson, an inmate at Parnall Correctional Facility in Jackson, Michigan, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1). Petitioner challenges his state convictions for criminal sexual conduct ("CSC") and assault with intent to do great bodily harm less than murder ("AWIGBH"). His petition raises various claims regarding the prosecuting attorney, certain state-court judges, and his trial counsel. For the reasons set forth below, the Court shall deny the petition. The Court shall also deny a certificate of appealability and leave to proceed in forma pauperis on appeal.

## I.    Background

Petitioner's convictions stem from two separate proceedings in Macomb County Circuit Court. In case number 2011-002189-FC, petitioner was tried by a jury and convicted of one count of first-degree CSC ("CSC I"), MICH. COMP. LAWS § 750.520b, and one count of AWIGBH, MICH. COMP. LAWS § 750.84. The complainant in that case was J.H.,[1] and the assault

_____

[1] Consistent with the state appellate court's decision, the Court will refer to the complaining witnesses by their initials.

occurred at a motel in Warren, Michigan in March 2011.

In the second case, number 2011-003549-FH, petitioner pleaded no-contest to two counts of third-degree CSC ("CSC III"), MICH. COMP. LAWS § 750.520d. The complainant in that case was M.B., and the alleged crime occurred at a motel in Roseville, Michigan in September 2011. In both cases, petitioner lured the women to a motel with a promise to supply drugs and/or alcohol and then assaulted the women in the motel room.

Both women testified at petitioner's jury trial in the first case. J.H. was the complaining witness, and she testified that she lost her sight in one eye due to the severity of the assault. However, she was unable to identify petitioner as the assailant as she had little memory of the incident. M.B. testified as an "other acts" witness.

Petitioner was the only defense witness. He conceded that he was guilty of assaulting J.H. with intent to do great bodily harm. But, as the Michigan Court of Appeals explained on direct review, petitioner did not

> deny being with either J.H. or M.B. at the respective motels or engaging in sexual intercourse with them. The only dispute [was] whether the sexual activity was consensual or forced. J.H. denied working as a prostitute at the relevant time and asserted that defendant struck her immediately upon entry into the motel room, rendering her unconscious during the majority of her time with defendant at that location. J.H. further denied having agreed to engage in sexual relations with defendant. DNA evidence collected from the room and [from J.H.] was linked to defendant.
>
> M.B. also testified that she declined to engage in sex with defendant and that he struck her and would not permit her to exit the motel room. M.B. asserted that defendant physically overpowered her and forced her to engage in sexual intercourse. Due to defendant's increasing level of violence commensurate with his ingestion of additional alcohol, M.B. acknowledged [that] she became submissive to his actions because she feared physical retribution, but did not voluntarily consent to the acts.

*People v. Robinson*, Nos. 311356 and 314604, 2014 WL 7157642, at *9 (Mich. Ct. App. Dec. 16, 2014) (alterations and paragraph break added).

Petitioner's defense to the CSC charges was "that both J.H. and M.B. were prostitutes and 'crack-whores' and that the sex was consensual based on his provision of illegal substances." *Id.* at *2. He also claimed that he punched J.H. multiple times because she took his money and cell phone and attempted to leave the motel room without returning the items. (ECF No. 11-6, PageID.565, 572-73).

At the conclusion of the proofs in the CSC I case, the trial court instructed the jury on the two charges, as well as CSC III, as a lesser included offense of CSC I. On May 18, 2012, the jury found petitioner guilty of CSC I and AWIGBH. (ECF No. 11-8, PageID.673).

Petitioner subsequently pleaded no-contest to two counts of CSC III in case number 2011-003549-FH. The parties and the judge in that case agreed that (1) the minimum sentence in both cases would not exceed 14 years, (2) the judge in the CSC III case would sentence petitioner in both cases, and (3) the sentences in the two cases would run concurrently.[2] The judge further

---

[2]   In Michigan, a trial judge may participate in sentencing discussions in the following manner:

> At the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.

> \*   \*   \*

> The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw

agreed not to sentence petitioner as a habitual offender in the CSC III case, which would have increased the maximum sentence from 15 years to 22.5 years.  (ECF No. 11-9, PageID.689-91; ECF No. 11-11, PageID.707).

On June 26, 2012, the trial court sentenced petitioner to 168 to 400 months' imprisonment for the CSC I conviction, 80 to 120 months' imprisonment for the AWIGBH conviction, and 100 to 180 months' imprisonment for each CSC III conviction. (ECF No. 11-10, PageID.703).  The court ordered that petitioner's sentences run concurrently with each other, and it awarded petitioner 286 days' credit for time served. (*Id*.).  Several months later, the trial court apparently amended the judgment of sentence as to the CSC I conviction to add a provision for lifetime electronic monitoring as a sex offender.  *See Robinson*, 2014 WL 7157642, at *18.

Petitioner subsequently moved to vacate his no-contest plea on the grounds that (1) he did not understand that the prosecution had withdrawn an agreement to dismiss the habitual-offender notice, (2) the prosecutor and the trial court misstated the maximum sentence for a habitual offender as 21 years instead of 22.5 years, (3) there was no record of the basis for the habitual-offender enhancement, and (4) he had pleaded no-contest under threat of otherwise being sentenced to 30 years' imprisonment. (ECF No. 11-11, PageID.706-07, 709).  The trial court denied that motion, noting that the *Cobbs* agreement covered the minimum sentence and that the agreement had been placed on the record.  The court further asserted that it had never threatened petitioner with 30 years' imprisonment, that the plea was in no way defective, and that defense counsel was aware of petitioner's sentencing range at the time of the plea.  (*Id*., PageID.709).

---

the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

*People v. Cobbs*, 505 N.W.2d 208, 212 (Mich. 1993) (emphasis and footnote omitted).

4

Petitioner appealed his convictions in both cases.   Appellate counsel raised several claims in his brief, and petitioner raised additional issues in a pro se supplemental brief.   The Michigan Court of Appeals consolidated the appeals and affirmed petitioner's convictions and sentence. *See Robinson*, 2014 WL 7157642.

In an application for leave to appeal before the Michigan Supreme Court, petitioner raised the same issues that he raised in his prior pro se supplemental brief, as well as two new issues that arose on appeal.   In lieu of granting leave to appeal, the Michigan Supreme Court reversed the portion of the court of appeals' judgment that addressed the trial court's sua sponte order for resentencing in the CSC I case (i.e., the belated addition of lifetime electronic monitoring). *See People v. Robinson*, 901 N.W.2d 875 (Mich. 2017).   The state supreme court also vacated the corresponding "order of correction of the judgment of sentence" in the CSC I case and remanded the case to the trial court for reinstatement of the initial judgment of sentence, stating that the trial court lacked the authority to make such an amendment after the judgment had been entered. *Id*.   The court denied leave to appeal in all other respects. *See id*.

Petitioner proceeded to file the instant habeas corpus petition, which raises the following grounds for relief:  (1) the prosecutor, trial judge, and defense counsel withheld J.H.'s medical records from him; (2) the judge at the preliminary hearing for the CSC III case was biased against defense counsel; (3) the trial court deprived him of effective counsel by refusing to appoint substitute counsel; (4) he was denied effective assistance of trial counsel; (5) the trial court deprived him of his statutory right to a polygraph with counsel present; (6) a state appellate judge abused her discretion when ruling on petitioner's motion to remand his case for an evidentiary hearing; (7) the prosecutor deprived him of a fair trial and his right to due process by denigrating and ridiculing him and by misrepresenting the facts and nature of the crimes; (8) trial  counsel was

ineffective in failing to call and produce defense witnesses; and (9) the trial court did not adhere to the sentencing agreement and added twelve years to the agreed upon maximum sentence. (ECF No. 1, PageID.6-28). Respondent opposes each of these claims. (ECF No. 10, PageID.268-70).

## II.    Standard of Review

The statutory authority for issuing habeas corpus relief to state prisoners is 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Section 2254(d) "provides that if a claim was adjudicated on the merits in state court, a federal court cannot grant relief unless the state court (1) contradicted or unreasonably applied [the Supreme] Court's precedents, or (2) handed down a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) (internal quotation marks omitted). "The question under AEDPA is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—a substantially higher threshold for a prisoner to meet." *Id*. (internal quotation marks and citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). "Only an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254[.]" *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), then *Richter*, 562 U.S. at 103). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris*, 989 F.3d 459, 469 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)),

6

*cert. denied*, 142 S. Ct. 483 (2021). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102 (citation omitted).

## III.   Discussion

### A.  Withholding Evidence

Petitioner first alleges that the prosecutor, the trial court, and defense counsel conspired to withhold J.H.'s medical records from him by removing the medical records from his discovery packet and pretending that the medical records did not exist. Petitioner contends that J.H. was blind before he assaulted her, and that there was no evidence that he caused her injury. Without the medical records, according to petitioner, defense counsel was unable to effectively cross-examine J.H. about her injuries.

The Michigan Court of Appeals determined that this claim was unpreserved for appellate review because petitioner did not specifically raise a claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) with the trial court. *Robinson*, 2014 WL 7157642, at *19.[3] The court of appeals ultimately concluded that petitioner's *Brady* claim lacked support in the record and consisted of "blatant speculation." *Id*. at *21. The court of appeals stated that there was nothing to suggest a conspiracy, improper conduct by the trial court or the prosecution, or inappropriate preclusion of discovery, and that petitioner's prosecutorial misconduct claim could therefore not be sustained. *See id*.

The Supreme Court held in *Brady* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to

---

[3] In his response brief, respondent does not argue that petitioner's claim is procedurally defaulted. He correctly notes that "showing an actual *Brady* violation is itself sufficient to show cause and prejudice" for a procedural default. *Jones v. Bagley*, 696 F.3d 475, 486-87 (6th Cir. 2012) (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). The Court shall therefore address petitioner's claim on the merits.

guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  A true *Brady* claim has three components:  "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  For the following reasons, the Court concludes that petitioner has not satisfied the three *Brady* elements.

### 1.  Exculpatory or Impeaching Evidence

Petitioner seems to think that J.H.'s medical records could have been used to impeach her because the records would have shown that she was blind before he assaulted her and that he did not cause her injuries.  Petitioner is merely speculating about the content of the medical records, and the testimony at trial contradicts his contention that J.H. was blind before he struck her.

J.H. testified that, on the night in question, she was standing in front of a party store when an African American man in his thirties pulled up in a car and waved her over.  She could see into the man's vehicle from where she was standing, and she noticed that he was holding a crack pipe in his hand.  (ECF No. 11-6, PageID.567-68).  Petitioner testified that J.H. recognized him when he picked her up that night.  (ECF No. 11-7, PageID.646).  He also testified that J.H. got in his car when he first called her over to the car, that she directed him to a crack house where she made a transaction and got back in his car, and that they subsequently went to the motel where J.H. walked up the stairs on her own.  (*Id.*, PageID.735).

There is no support in the record for petitioner's contention that J.H. was blind before he assaulted her, and it was undisputed at trial that J.H. was injured during her encounter

with petitioner.  Thus, petitioner has failed to establish that J.H.'s medical records constituted exculpatory or impeaching evidence.

### 2.  Suppression

Petitioner also has not demonstrated that the prosecutor suppressed J.H.'s medical records or conspired with the trial court to withhold the records from petitioner.  At a pretrial conference, a prosecuting attorney stated that petitioner was entitled to the records and that he would make sure petitioner received all the records if they had not already been provided to him. The defense attorney who was representing petitioner at the time stated that the records had been provided to him, and the trial court granted defense counsel's request for the evidence.  (ECF No. 14-1, PageID.1891-93).

At a subsequent hearing, the trial prosecutor stated that he did not have J.H.'s medical records in his file and that there was no indication that the victims had any psychological records.  But he agreed to inquire as to whether the complainant had any psychological records and, if so, to make the records available for the trial court's in camera inspection.  (ECF No. 14-4, PageID.1917-19).  The record simply does not support petitioner's contention that the prosecutor, trial counsel, and the trial court conspired to keep J.H.'s medical records from him.

### 3.  Materiality

"[T]o prove prejudice, [petitioner] must show that the suppressed evidence is 'material,' meaning that there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Hall v. Mays*, 7 F.4th 433, 446 (6th Cir. 2021) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)), *cert. denied*, 142 S. Ct. 2655 (2022).  "A petitioner does not prove materiality, for purposes of demonstrating

prejudice, when the potentially exculpatory evidence is 'merely cumulative' to information presented at trial to impeach his credibility." *Id*. at 447.

At a pretrial hearing on pending motions, petitioner's trial attorney agreed with the prosecutor that the issue at trial was not going to be J.H.'s injuries. Instead, according to trial counsel, the issue would be whether the sexual activity was consensual. (ECF No. 14-4, PageID.1917). J.H., moreover, described her injuries at trial. She explained that, prior to the incident with petitioner, she had cataract surgery in both eyes, and when petitioner punched her in the eye, one optical lens came out, and thirteen months later her eye had to be removed. She was wearing a patch on her eye at trial because she was still getting used to her new prosthetic eye. (ECF No. 11-6, PageID.569-70). Petitioner conceded that he hit J.H. in the face and that he punched her four times. He said that he knocked her down at least two times, and he admitted that her face was bleeding and that one of the pillowcases in the motel room was a "bloody mess." (ECF No. 11-7, PageID.649-50).

Given petitioner's admission that he hurt J.H., and J.H.'s explanation of her medical history, there is no reasonable probability that, had J.H.'s medical records been disclosed to petitioner, the result of the proceeding would have been different. The Court concludes that petitioner has failed to prove any of the three elements of a true *Brady* claim, and the state appellate court's adjudication of petitioner's claim was not contrary to, or an unreasonable application of, federal law or the facts of this case. As such, petitioner is not entitled to relief on this claim.

**B.  Judicial Bias**

Petitioner's second habeas claim asserts that at his preliminary examination in the CSC III case, the district court judge was biased against defense counsel. Petitioner alleges that the judge refused to allow defense counsel to effectively question M.B. at the preliminary

examination.  Petitioner also points out that, although the judge acknowledged that some things

did not "line up" or "sit right with [her]," (ECF No. 11-3, PageID.439), she nonetheless bound

petitioner over for trial.  According to petitioner, the reason for the bind-over was that M.B. is

white and he is black.

Respondent argues that this claim is procedurally defaulted because the Michigan

Court of Appeals stated in its analysis of petitioner's claim that "[u]npreserved challenges of

judicial bias are reviewed for plain error affecting substantial rights."  *Robinson*, 2014 WL

7157642, at *9.  Later in that opinion, however, the court of appeals seemed to adjudicate the claim

on the merits, stating:

> A review of the record reveals nothing inherently inappropriate or
> suggestive of bias.  It is the duty of a trial judge to control the
> proceedings and limit the introduction of evidence.  *See* MCL
> 768.29 and MCR 2.513(B).  In this instance, the trial court's
> interruptions were designed to control the courtroom, prevent any
> improper influence on the testimony of witnesses, respond to
> objections and clarify testimony or responses.  Defendant's claim of
> bias or prejudice cannot be established merely because the trial court
> ultimately ruled against defendant and bound him over for trial.  *In
> re Contempt of Henry*, 282 Mich. App 656, 680; 765 NW2d 44
> (2009).

*Id.* at *10.

A procedural default in the habeas context is not a jurisdictional matter, *see Trest*

*v. Cain*, 522 U.S. 87, 89 (1997), and "federal courts are not required to address a procedural-default

issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215

(6th Cir. 2003).  Accordingly, to the extent petitioner's claim may be procedurally defaulted, the

Court excuses the procedural error.

On the merits, the Court acknowledges that petitioner had a constitutional right to

a judge with no actual bias against him or interest in the outcome of his case.  *Bracy v. Gramley*,

520 U.S. 899, 904-05 (1997).  But petitioner pleaded no-contest in the CSC III case, and a no-contest plea, like a guilty plea, "constitutes a waiver of all so-called 'non-jurisdictional defects' or, more accurately, any claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him."  *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).  In the words of the Supreme Court:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.  Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).  Stated differently,

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea[.]

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

In the present case, petitioner was represented by counsel at his plea.  Even though he initially insinuated that his trial attorney had coerced him into pleading no-contest, he ultimately admitted that no one had forced him to plead no-contest and that he was doing so freely.  (ECF No. 11-9, PageID.686-88).  His no-contest plea, therefore, forecloses review of his challenge to the state district court's alleged conduct.

Further, petitioner has not shown that "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the

interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). And there is no indication that judge's evidentiary rulings or her ultimate conclusion – that the prosecution had established probable cause – were the result of judicial bias. Petitioner's claim consequently lacks substantive merit in addition to being foreclosed by his no-contest plea. As such, he is not entitled to relief on this claim.

### C.  The Trial Court's Failure to Appoint Substitute Counsel

Petitioner next alleges that the trial court abused its discretion by denying his request for substitute counsel without first inquiring into the basis for that request. Petitioner states that he wanted to fire his attorney because the attorney failed to appear at petitioner's polygraph examination and later falsely informed the trial court that he was not appointed until after the polygraph examination.

The Michigan Court of Appeals rejected petitioner's argument and concluded that petitioner had waived appellate review of his claim because he seemed to admit at a pretrial hearing that trial counsel had not been appointed as of the date of the polygraph examination. *Robinson*, 2014 WL 7157642, at *22; (ECF No. 14-5, PageID.1938-39) (transcript providing the trial court's question and petitioner's response as to whether petitioner was represented by a lawyer at the time of the polygraph examination).

The record, however, indicates that trial counsel was representing petitioner on both cases at a motion hearing on March 15, 2012, which was *before* a date was set for the polygraph examination. (ECF No. 14-4, PageID.1914, 1930-31). The Michigan Court of Appeals appears to have erred when it concluded that petitioner waived his claim about substitution of counsel by admitting that counsel had not been appointed before the polygraph examination. The Court shall therefore address the merits of petitioner's claim, rather than treating his claim as waived.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right is applicable to the states through the Fourteenth Amendment, *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963)), and "implicit in this guarantee is the right to be represented by counsel of one's own choice." *Linton v. Perini*, 656 F.2d 207, 208 (6th Cir. 1981).

But "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (explaining that, even though the Sixth Amendment guarantees defendants in criminal cases the right to adequate representation, "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts"). And even though a trial court "cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected," *Linton*, 656 F.2d at 209, a court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citations omitted); *see also United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971) ("A motion for new court-appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the trial court.").

When an accused seeks substitution of appointed counsel late in the case, "he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). Factors that courts may consider when reviewing substitution

motions include: "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). When evaluating the extent of the conflict between the defendant and his attorney, a court may consider whether the conflict "was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

       In the present case, the record does not support petitioner's claim that the trial court abused its discretion in denying his request for substitution of counsel. First, petitioner's trial attorney was not his first attorney. He retained an attorney initially, and at least one previous court-appointed attorney withdrew his representation because he was not qualified to handle the case after the prosecutor elevated the charge from CSC III to CSC I. (ECF No. 11-5, PageID.505); (ECF No. 14-2, PageID.1900-01). Petitioner first asked to replace his trial attorney at a final pretrial conference just three weeks before his trial was to begin. (ECF No. 14-5, PageID.1941-42). A change of counsel at that stage of the proceedings likely would have been disruptive to the prosecution, the witnesses, and the trial court.

       Second, although the trial court initially did not inquire into the reasons for petitioner's dissatisfaction with counsel, petitioner had already informed the court that he did not think his attorney was doing a good job. (ECF No. 14-5, PageID.1941). The trial court also gave petitioner almost five hours to speak with trial counsel to resolve any differences of opinion. (*Id.*, PageID.1942). Further, the issue of substitute counsel arose again at a hearing on the date set for petitioner's trial. At that time, the trial court did adequately inquire into the reasons for petitioner's dissatisfaction with counsel. (ECF No. 11-5, PageID.505-10).

Third, petitioner stated that he wanted a different attorney because he did not trust defense counsel. He asserted that the attorney had lied to him, withheld evidence from him, did not do all the things they had discussed, and had agreed with the prosecution that petitioner was not cooperative at the polygraph examination. (*Id*., PageID.505-06). Petitioner also stated that trial counsel was "too far towards the prosecution's side." (*Id.*, PageID.508). Most of these allegations were vague, and when the trial court asked petitioner whether he had been uncooperative at the polygraph examination, petitioner quibbled about the meaning of "uncooperative." (*Id*., PageID.506-07). The Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Vague assertions of mistrust do not amount to the complete breakdown in communication or irreconcilable conflict necessary to warrant substitution of counsel.

Finally, there is no indication in the record that the alleged conflict between petitioner and trial counsel was so great that it deprived petitioner of an adequate defense. After petitioner raised his concerns regarding counsel at the final pretrial conference, he and his attorney were still able to discuss, and reach a decision on, a trial strategy, (ECF No. 11-6, PageID.535), and whether petitioner should testify in his own defense. (ECF No. 11-7, PageID.633-34).

To summarize, (1) petitioner's request for substitution of counsel was not timely, (2) the trial court conducted an adequate inquiry into petitioner's dissatisfaction with counsel, (3) petitioner's reasons for requesting another attorney did not warrant substitution of counsel, and (4) the alleged conflict between petitioner and trial counsel did not deny him of an adequate defense. The trial court, therefore, did not abuse its discretion by denying petitioner's request for appointment of substitute counsel, and the state appellate court's rejection of petitioner's claim was not objectively unreasonable. Petitioner has no right to relief on this claim.

### D.  Ineffective Assistance of Trial Counsel

Petitioner's fourth and eighth grounds for relief allege ineffective assistance of trial counsel.  Petitioner asserts that defense counsel:  (1) stood in the back of the courtroom during the prosecutor's cross-examination of petitioner; (2) stated during closing arguments that he (defense counsel) trusted the prosecutor even though the prosecutor incorrectly stated that petitioner weighed 260 pounds, not 205 pounds; (3) ineffectively cross-examined M.B.; (4) failed to object when the prosecutor stated during closing arguments that petitioner had raped other women and that bruises do not immediately turn black and blue; and (5) failed to produce certain defense witnesses.

A habeas court's review of a lawyer's performance is "doubly deferential." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014).  The first layer of deference is the deficient-performance-plus-prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under *Strickland*, petitioner must show that (1) counsel's "performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687.  Constitutionally deficient performance may be found if "counsel committed an error so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687, internal quotation marks omitted).  A strong presumption of effectiveness applies. *See Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000).

Under AEDPA, the second layer of deference asks "whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226. To prevail on an ineffective assistance claim, a habeas petitioner "must show that the [state court]

applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

### 1.   Standing in the Back of the Courtroom

The first allegation, that trial counsel stood in a corner in the back of the courtroom during the prosecutor's cross-examination of petitioner, lacks factual support in the record.  Even if it were true, petitioner has not shown that he was prejudiced by counsel's conduct.  He asserts that counsel's conduct demonstrated a breakdown in the attorney-client relationship.  (ECF No. 12, PageID.1872).  Alternatively, the jury could have viewed counsel's conduct as a sign of confidence in petitioner's ability to defend himself.  The Court concludes that petitioner has failed to show that trial counsel's location in the courtroom during cross-examination constituted either deficient or prejudicial performance.

### 2.   Stating that He Trusted the Prosecutor

Petitioner blames trial counsel for stating during closing arguments that the prosecutor had done his job honestly and fairly and that he had given petitioner a fair trial.  (ECF No. 11-8, PageID.665).  Petitioner maintains that trial counsel's remarks amounted to ineffective assistance because the prosecutor had previously stated that petitioner weighed 260 pounds, not 205 pounds.  The prosecutor commented on petitioner's weight when contrasting his size with that of J.H.  He made a minor mistake about petitioner's weight but apologized immediately when petitioner pointed out the error.

Trial counsel subsequently responded to the error by stating that the mistake was immaterial and that "[w]e all make mistakes."  (*Id*., PageID.665-66).  Trial counsel's additional comments, that the prosecutor had performed his job fairly and honestly and had given petitioner a fair trial, did not amount to deficient performance, nor did they prejudice petitioner.  The only

real dispute in the case was whether the sexual activity between petitioner and J.H. was consensual, and it was up to the jury to assess the parties' credibility.

The Michigan Court of Appeals stated on review that the prosecutor's misstatement about petitioner's weight was not prejudicial and that petitioner's affiliate claim of ineffective assistance of counsel due to the failure to object was not meritorious. *See Robinson*, 2014 WL 7157642, at *11, *13. Because this conclusion was objectively reasonable, petitioner is not entitled to relief on this claim.

### 3. Failure to Investigate, Read Discovery Materials, and Effectively Cross-Examine M.B.

Petitioner raises two claims regarding counsel's cross-examination of M.B. First, he asserts that trial counsel was ineffective because he asked M.B. whether petitioner had "punched and raped [her] at least 10 times." (ECF No. 11-7, PageID.621). M.B. responded that petitioner had "raped [her] three times." (*Id*.). According to petitioner, trial counsel's question showed that counsel had failed to thoroughly investigate the case.

In denying this claim, the Michigan Court of Appeals stated:

> M.B. corrected [defense counsel] by denying the higher number and asserting, "He raped me three times." Decisions pertaining to the questioning of witnesses are presumed to comprise trial strategy and this Court will not "second guess counsel on matters of trial strategy, nor will [it] assess counsel's competence with the benefit of hindsight."

*Robinson*, 2014 WL 7157642, at *16 (quoting *People v. Horn*, 755 N.W.2d 212, (Mich. Ct. App. 2008)).

Second, petitioner claims that trial counsel could have more rigorously cross-examined M.B., when it appeared that she did not "know when the alleged rape happened." (ECF No. 1, PageID.26). Petitioner notes that on direct examination, M.B. did not correct the prosecutor

19

when he misstated that the incident occurred in March, rather than September.  Petitioner contends

that defense counsel "aid[ed] the prosecution" by providing M.B. with the correct date on cross-

examination.  (*Id*.).

In rejecting this argument on review, the Michigan Court of Appeals stated:

"Defendant cannot possibly demonstrate that such a misstatement, which was ultimately corrected,

comprised outcome-determinative error or deprived him of a substantial defense." *Robinson*, 2014

WL 7157642, at *16.

The state court's decisions as to these two claims are neither contrary to Supreme

Court precedent nor unreasonable applications of federal law.  As the Sixth Circuit has explained:

"Most cross-examinations can be improved but if that were the standard of constitutional

effectiveness, few would be the counsel whose performance [pass] muster." *Jackson v. Bradshaw*,

681 F.3d 753, 765 (6th Cir. 2012) (internal quotation marks and citations omitted).  There is no

indication that counsel's cross-examination of M.B. was constitutionally deficient.

### 4.   Failure to Object to the Prosecutor's Remarks

Petitioner next asserts that trial counsel was ineffective for failing to object when

the prosecutor stated during closing arguments that petitioner had assaulted, raped, and injured at

least three women, (ECF No. 11-8, PageID.662), and that bruises do not "immediately turn black

and blue, they take a while to develop[.]"  (*Id*., PageID.663).  The prosecutor's remark about

bruises was proper because it was based on testimony.  M.B., for example, testified that she did

not look bruised on the day of the incident with petitioner; instead, she looked bruised four or five

days later.  (ECF No. 11-7, PageID.620).  Also, Officer Neiborg did not remember seeing the

bruising on M.B.'s face on the day of the crime, (*Id*., PageID.629-30), but Detective Brad

McKenzie noticed the purple marks and discoloration on M.B.'s face four or five days later.  (*Id.*, PageID.630-31).

Because the prosecutor's remark was based on the evidence, the Michigan Court of Appeals correctly concluded that it was not improper and did not amount to prosecutorial misconduct.  *See Robinson*, 2014 WL 7157642, at *13.  The court of appeals also concluded that petitioner's affiliated claim about trial counsel's failure to object to the remark lacked merit.  *See id.* at *15.  An objection by trial counsel would have been futile, and "the failure to make futile objections does not constitute ineffective assistance[.]"  *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).

The prosecutor's remark that at least three women had accused petitioner of assaulting, raping, and injuring them, (ECF No. 11-8, PageID.662), was misleading and not supported by the evidence.  The evidence at trial established that petitioner had raped two women (J.H. and M.B.).  Further, the prosecutor asked petitioner on cross-examination whether anyone else had accused him of rape in the past.  Petitioner acknowledged an incident with a prostitute a few years earlier, but he denied raping that woman or being accused of, or charged with, rape in that instance.  (ECF No. 11-7, PageID.653).

Under the circumstances, trial counsel could have concluded that it was better not to object to the prosecutor's remark about a third prostitute accusing petitioner of rape, which may have only drawn greater attention to the remark.  As stated in *United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006),

> [t]here is a paradoxical impossibility in asking an individual not to think about a particular fact, because that very request calls attention to the fact that is to be ignored.  *See Ferguson v. Knight,* 809 F.2d 1239, 1243 (6th Cir. 1987).  This course of not drawing attention to the statement may be perfectly sound from a tactical standpoint[.]

*See also People v. Bahoda*, 531 N.W.2d 659, 672 n.54 (Mich. 1995) ("Certainly there are times when it is better not to object and draw attention to an improper comment."). Trial counsel was not ineffective for failing to object to the prosecutor's remark. Further, the Michigan Court of Appeals reasonably concluded that the prosecutor's "misstatement was minor, given the context and content of the entire argument," and that the trial court's instructions to the jury – that the attorneys' arguments and statements were not evidence – were presumed to have cured "any potential prejudice." *Robinson*, 2014 WL 7157642, at *12. Accordingly, petitioner is not entitled to relief on this claim.

### 5. Failure to Produce Witnesses

Petitioner next asserts that defense counsel should have produced at least one of the two police officers who interviewed J.H. in the hospital. Petitioner contends that the officers would have testified that J.H. had informed the police that she was working as a prostitute on the night of the assault, and that this testimony would have contradicted testimony provided by J.H. Petitioner insinuates that trial counsel also should have produced a third officer, who would have testified that M.B. initially lied to him.

"Under *Strickland*, we must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy" that fall within the attorney's broad professional discretion. *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). As the Michigan Court of Appeals noted, "[d]efense counsel was treading a fine line between advocating his client's defense of consensual sexual contact and potentially engendering the animosity of the jury by being perceived to blame the victims for defendant's alleged behavior." *Robinson*, 2014 WL 7157642, at *15.

Further, the court of appeals rejected petitioner's claim as speculative and concluded that the omission of the testimony did not deprive petitioner of a significant defense because the testimony "was presented to the jury through other witnesses, thereby rendering additional evidence merely cumulative." *Id*. The state court's conclusions were objectively reasonable. Petitioner is not entitled to relief on this claim.

### E.  The Polygraph Examination

Petitioner next alleges that the trial court deprived him of his statutory right to a polygraph with defense counsel present. Petitioner was entitled to a polygraph examination under state law because he was charged with criminal sexual conduct. *See* MICH. COMP. LAWS § 776.21(5) (indicating that a defendant who allegedly has committed criminal sexual conduct "shall be given a polygraph examination or lie detector test if the defendant requests it"). "The purpose of affording individuals accused of criminal sexual conduct a right to a polygraph exam is to provide a means by which accused individuals can demonstrate their innocence, thereby obviating the necessity of a trial." *People v. Phillips*, 649 N.W.2d 407, 412 (Mich. Ct. App. 2002).

Petitioner was offered a polygraph examination in the CSC III case, but the record indicates that he declined to answer basic questions and was uncooperative when an officer attempted to conduct the examination. Although he requested the examination, he accused the examiner and a special agent of conspiring to trick him, and he stated that he did not trust the examiners to administer the test fairly. After four hours of attempting to get through certain preliminary questions unrelated to the crimes, the officer stopped the examination due to petitioner's lack of cooperation. (ECF No. 14-5, PageID.1937-38, 1943); (ECF No. 14-6, PageID.1955-56).

Petitioner claimed at a hearing on the issue that the examiner had asked him irrelevant questions and did not like it when petitioner asked to speak with a lawyer before they went any further.  (ECF No. 14-5, PageID.1938-39).  Neither trial counsel, nor the prosecutor, knew for sure whether petitioner's right to counsel had attached at the time.  (ECF No. 14-6, PageID.1958-59).

First, petitioner's right to a polygraph examination is grounded in state law.  "[T]here is no constitutional right to have polygraph evidence admitted at trial[]."  *United States v. Thomas*, 167 F.3d 299, 308 n.8 (6th Cir. 1999) (citing *United States v. Scheffer,* 523 U.S. 303, 309-15 (1998)).  It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[A] federal court may issue the writ [of habeas corpus] to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting § 2254(a)).

Second, although the Michigan Court of Appeals did not address this specific issue, it did address the broader issue of whether petitioner was denied a polygraph examination in both CSC cases.  The court of appeals concluded that petitioner's "statutory right to a polygraph examination was satisfied" in that he "was afforded an opportunity to demonstrate his innocence through a polygraph examination, but wasted that opportunity based on his refusal to engage in the requisite process."  *Robinson*, 2014 WL 7157642, at *8.  This conclusion was not an unreasonable application of the relevant facts or applicable law.  Petitioner is not entitled to relief on this claim.

### F. The Appellate Judge

Petitioner next alleges that Michigan Court of Appeals Judge Deborah A. Servitto abused her discretion when she denied petitioner's motion to remand the case for an evidentiary hearing on his claim regarding defense counsel. According to petitioner, the prosecutor assigned to his criminal case is Judge Servitto's son or stepson, and, therefore, Judge Servitto should have recused herself instead of ruling on his motion for a remand.

Respondent argues that petitioner did not exhaust state remedies for this claim because he raised it for the first time in the Michigan Supreme Court, a point that petitioner concedes. "Title 28 U.S.C. § 2254(c) provides that a claim shall not be deemed exhausted so long as a petitioner 'has the right under the law of the State to raise, by any available procedure, the question presented.'" *Castille v. Peoples*, 490 U.S. 346, 350 (1989). Presentation of a claim to a state's highest court on discretionary review, without more, "does not, for the relevant purpose, constitute fair presentation." *Id.* at 351 (internal quotation marks omitted). But exhaustion is not a jurisdictional requirement. *See id*. at 349. A court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Section 2254(b)(2).

Not every attack on a judge is a basis for disqualification of the judge. *See Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971). "[A]ctual bias, if disclosed, no doubt would be grounds for appropriate relief." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009). Still, a judge's unfavorable rulings are almost never a sufficient basis on which to infer bias. *See Houston v. Logan*, 674 F.3d 613, 614 (6th Cir. 2012). "The inquiry is an objective one." *Caperton,* 556 U.S. at 881. So, when reviewing claims of actual bias, courts must

> "ask[ ] not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his

25

> position is likely to be neutral, or whether there is an
> unconstitutional potential for bias." [*Williams*, 556 U.S. at 8]
> (internal quotation marks omitted). Moreover, claims of bias "must
> overcome a presumption of honesty and integrity in those serving as
> adjudicators[.]" *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456,
> 43 L.Ed.2d 712 (1975).

*Johnson v. Morales*, 946 F.3d 911, 918 (6th Cir. 2020).

Appellate counsel investigated petitioner's concern about Judge Servitto and determined that she was not related by blood to Michael Servitto, who was the assistant prosecutor assigned to petitioner's criminal cases. Instead, Judge Servitto was married to Michael Servitto's father many years earlier, and they had long since divorced. (ECF No. 1, PageID.33). The appellate attorney did not think those facts were a sufficient basis for concluding that Judge Servitto was biased in favor of her ex-husband's son. (*Id*.).

The record, moreover, shows that Judge Servitto's only involvement in petitioner's case was signing a one-sentence order denying petitioner's motion to remand his case to the trial court for an evidentiary hearing on trial counsel's performance. Judge Servitto denied the motion "for failure to persuade the Court of the necessity of a remand at this time," (ECF No. 1, PageID.88), and she signed the order as the presiding judge in a matter involving two other appellate judges. She did not participate in the dispositive decision issued by the Michigan Court of Appeals almost two years later.

The average judge in Judge Servitto's position would have likely been neutral when ruling on the issue of whether petitioner was entitled to a remand for an evidentiary hearing on trial counsel's performance. Petitioner has not overcome the presumption that Judge Servitto acted honestly and with integrity. There is no indication that petitioner's right to a fair and unbiased judge was violated. He therefore has no right to relief on this claim.

**G. The Prosecutor**

The seventh ground for relief alleges that the state prosecutor engaged in misconduct by denigrating petitioner and misrepresenting facts during closing arguments. The Michigan Court of Appeals determined that petitioner failed to preserve the bulk of his prosecutorial misconduct claim as relevant objections were not raised at trial. *See Robinson*, 2014 WL 7157642, at *11.

As noted above, a procedural default in the habeas context is not a jurisdictional matter. *See Trest,* 522 U.S. at 89. A court may bypass a procedural-default question if the claim is "easily resolvable against the habeas petitioner." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Court finds it more efficient to resolve petitioner's claims on the merits than to conduct a procedural-default analysis. The Court, therefore, excuses the alleged procedural default and goes directly to the merits of petitioner's claims regarding the prosecutor.

"On habeas review, the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise." *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015) (internal quotation marks omitted). Consequently, although prosecutors must "refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States*, 318 U.S. 236, 248 (1943), prosecutorial-misconduct claims are reviewed deferentially in a habeas case. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

In *Darden v. Wainwright*, 477 U.S. 168 (1986), the Supreme Court stated that a prosecutor's improper comments violate the Constitution only if they "so infect[]the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181. Consequently,

"[i]n deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). "The Court must examine the fairness of the trial, not the culpability of the prosecutor." *Id*. (internal quotation marks omitted).  On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks and citation).

### 1.  The Number of Women Raped

Petitioner alleges that the prosecutor mispresented the facts when he stated during closing arguments that at least three women had said that he assaulted, raped, and injured them. (ECF No. 11-8, PageID.662).

Prosecutors may not assert facts that were not admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000).  As discussed above, the evidence at petitioner's trial established that he raped two, not three, women, and petitioner denied being accused of, or charged with, rape related to a third alleged incident years earlier.  (ECF No. 11-7, PageID.653). There was no admissible evidence that a third woman had accused petitioner of raping her.

The Michigan Court of Appeals, however, described the prosecutor's reference to a third individual as "a simple misstatement by the prosecutor," one that "was minor, given the context and content of the entire argument." *Robinson*, 2014 WL 7157642, at *12.  The court of appeals further noted that "the trial court instructed the jury that the arguments and statements of the attorneys were not evidence and could not be considered as such, correcting any potential prejudice." *Id*.

### 2.   Narcissism

Petitioner also objects to the prosecutor's remarks that petitioner was "in love with himself," that he thought he was "God's gift to women," that he was "narcissistic," and that he derived "some satisfaction, some pleasure in describing in detail each one of his sexual exploits." (ECF No. 11-8, PageID.660, 662).   A prosecutor's offensive comments and emotional reactions, even if improper, do not necessarily deprive a defendant of a fair trial.   *See Darden*, 477 U.S. at 179-81; *see also Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (calling the defendant a demon did not require setting aside a state conviction); *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000) (stating that "the prosecutor's use of the term 'predator' to describe Petitioner did not deprive him of a fair trial").   Furthermore, the remarks were based on the evidence and petitioner's demeanor at trial.   Prosecutors are entitled to assert reasonable inferences from the evidence.   *See Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

### 3.   Petitioner's Weight

Finally, petitioner challenges the prosecutor's misstatements regarding petitioner's weight.   Although petitioner testified that he weighed 205 pounds, (ECF No. 11-7, PageID.648), the prosecutor twice stated that petitioner weighed 260 pounds.   (ECF No. 11-8, PageID.660, 664). The second time that the prosecutor said that petitioner weighed 260 pounds, petitioner interrupted the prosecutor's argument and said, "205."   (*Id.*, PageID.664).   Trial counsel later stated that the prosecutor's mistake was immaterial.   (*Id.*, PageID.665-66).

Further, as the Michigan Court of Appeals concluded:

This misstatement was minor and was immediately corrected by defendant. In addition, the jury was able to observe defendant during trial and at the time of the statement to determine its accuracy. This corrected misstatement was not prejudicial. Further, any misstatement was cured by the trial court's instruction that the arguments of counsel did not comprise evidence.

29

*Robinson*, 2014 WL 7157642, at *11.

For the above reasons, the Court concludes that the prosecutor's remarks about petitioner's alleged narcissism and demeanor at trial were proper, and his misstatements about petitioner's weight and the number of women who had accused petitioner of rape could not have had a substantial and injurious influence on the jurors. Therefore, even if the contested remarks rose to the level of a constitutional error, the alleged misconduct was harmless.

### H.  Petitioner's Sentence

Petitioner's ninth and final claim raises two challenges regarding his sentence. First, petitioner alleges that the trial court abused its discretion and violated the *Cobbs* agreement by increasing the maximum sentence in the CSC I case. According to petitioner, the court agreed to sentence him to a maximum of 21 years in prison, but the court ultimately sentenced him to a maximum of 33 years.

The Michigan Court of Appeals determined that the trial court procedurally complied with the *Cobbs* agreement. *Robinson*, 2014 WL 7157642, at *27. *Cobbs*, moreover, is a Michigan Supreme Court decision. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Further, the *Cobbs* agreement established a *minimum* sentence of 14 years (168 months). (ECF No. 11-9, PageID.679-80, 686). The trial court honored this agreement when it sentenced petitioner to a minimum sentence of 168 months for the CSC I conviction, 80 months for the AWIGBH conviction, and 100 months for the CSC III conviction. The parties did not establish a maximum sentence, but rather agreed that the maximum would be determined by the trial court. (*Id.*, PageID.681).

Second, petitioner contends that he was sentenced as though he assaulted M.B., an act for which he was not charged. The Court shall interpret this argument as a challenge to the five points that petitioner received for Offense Variable 3 ("OV 3") of the Michigan sentencing guidelines.

As with petitioner's *Cobbs*-related challenge, state sentencing guidelines are "a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68.

Even if the Court were to construe petitioner's claim as a federal constitutional argument, a sentencing court violates the right to due process only if the court relies on "extensively and materially false" information that the defendant had no opportunity to correct through counsel. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Stated differently, to violate due process, the sentence must be "founded at least in part upon misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972).

OV 3 addresses physical injury to a victim. *See* MICH. COMP. LAWS § 777.33(1). Five points is a proper score if "[b]odily injury not requiring medical treatment occurred to a victim." MICH. COMP. LAWS § 777.33(1)(e). M.B. testified that petitioner struck her on the face several times after sexually penetrating her and that the skin around her eye turned black a few days later. She also claimed that her lip was injured and that she had headaches every day since the incident. (ECF No. 11-7, PageID.616-18, 620). A sexual assault nurse testified that M.B. had purple and red bruises on her face, an abrasion on her inner lip, and circular swelling around her

31

anus. (*Id*., PageID.626-27). Given this testimony at trial, the state court did not abuse its discretion or rely on materially false information when it scored five points for OV 3. Petitioner's state-law claim is not cognizable on habeas review, and to the extent that he raises a federal constitutional issue, the claim lacks merit.

## IV.      Conclusion

Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because no appeal in this case could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).


                                        s/Bernard A. Friedman
Dated: September 15, 2022               BERNARD A. FRIEDMAN
        Detroit, Michigan               SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on September 15, 2022.

**Albert Robinson** #602273                          s/Johnetta M. Curry-Williams
PARNALL CORRECTIONAL FACILITY - SMT      Case Manager
1780 E. PARNALL
JACKSON, MI 49201